UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INNOVATIVE WATER CONSULTING, LLC d/b/a IWC INNOVATIONS,<br><br>                    Plaintiff,<br><br>            v.<br><br>SA HOSPITAL ACQUISITION GROUP, LLC d/b/a SOUTH CITY HOSPITAL, LAWRENCE E. FEIGEN,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:22-cv-00500-TWP-MJD<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON DEFENDANTS' RENEWED MOTION TO STRIKE
AND MOTION TO DISMISS COUNT III**

This matter is before the Court on the Defendants SA Hospital Acquisition Group, LLC's d/b/a South City Hospital ("SCH") and Lawrence E. Feigen's ("Feigen") (SCH and Feigen, together, "Defendants") Renewed Motion to Strike Count IV (Filing No. 35;[1] Filing No. 45) and Motion to Dismiss Count III of Plaintiff's Amended Complaint (Filing No. 38). Plaintiff Innovative Water Consulting, LLC d/b/a IWC Innovations ("IWC") initiated this action against only SCH, asserting claims for breach of contract and unjust enrichment related to a Services Agreement for the sale of COVID-19 test kits. After SCH filed an answer, IWC moved for leave to file a proposed amended complaint, which added Feigen as a defendant and asserted a new claim, Count III, against Feigen to enforce an alleged personal guaranty. The Court granted IWC leave to file its proposed amended complaint, but IWC filed a different amended complaint than that which was requested. Defendants move to strike Count IV and to dismiss Count III of the

---
[1] Because Defendants renewed their Motion to Strike at Filing No. 45, their initial Motion to Strike is now moot. Defendants' initial Motion to Strike (Filing No. 35), is **denied** as moot.

Amended Complaint. For the following reasons, the Court **grants** Defendants' Renewed Motion to Strike Count IV and **grants** Defendants' Motion to Dismiss Count III.

## I. DEFENDANTS' MOTION TO STRIKE

The Court will first discuss the procedural history of this case and then rule on Defendants' Renewed Motion to Strike Count IV, before addressing Defendants' Motion to Dismiss Count III.

### A. PROCEDURAL HISTORY

On March 15, 2022, IWC filed this lawsuit against SCH for Count I-Breach of Contract and Count 2-Unjust Enrichment (Filing No. 1). On May 10, 2022, SCH filed an answer to the Complaint (Filing No. 10). Ten days later, IWC filed its Motion for Leave to Amend Complaint ("First Motion for Leave"), seeking to add Feigen—one of SCH's individual members—as a defendant, and to assert an additional claim against Feigen (Filing No. 13). "As required by Local Rule 15-1, IWC . . . included as **Exhibit 1**, a signed copy of its proposed amended pleading and a proposed order" ("Proposed Amended Complaint") (*Id.* ¶ 7 (emphasis in original); Filing No. 13-1). As described in the First Motion for Leave, the Proposed Amended Complaint named Feigen as a defendant and added a Count III- Feigen's Payment Guaranty (Filing No. 13-1 at ¶¶ 23–26).

Shortly after they finished briefing the First Motion for Leave, the parties tendered, and the Court approved, a Case Management Plan providing that "[a]ll motions for leave to amend the pleadings and/or to join additional parties shall be filed on or before August 15, 2022" (Filing No. 19; Filing No. 23 at ¶ III(D)). On August 15, 2022, while IWC 's First Motion for Leave was still pending, IWC filed a Motion for Leave to File a Second Amended Complaint (Filing No. 27) ("Second Motion for Leave"). In its second motion, IWC stated that SCH had administratively dissolved on or around June 13, 2022, and it sought to add three more of SCH's individual members as defendants (*Id.* at ¶ 5). IWC again attached a copy of its proposed Second Amended Complaint to its Second Motion for Leave, in compliance with Local Rule 15-1 (*Id.* at ¶ 9; Filing No. 27-1).

On September 30, 2022, the Court granted IWC 's First Motion for Leave but denied the Second Motion for Leave ([Filing No. 29](Filing No. 29); [Filing No. 30](Filing No. 30)). The Court ordered IWC to file its Proposed Amended Complaint within three days of the Court's Order ([Filing No. 29](Filing No. 29)). On October 3, 2022, IWC filed an Amended Complaint (the "as-filed Amended Complaint"), which differed from its proposed Amended Complaint. Whereas the proposed Amended Complaint contained twenty-six allegations comprising three counts—Count I-Breach of Contract against SCH; Count II- Unjust Enrichment against SCH; and Count III- Payment Guaranty against Feigen—the as-filed Amended Complaint added a twenty-seventh paragraph in Count III and Count IV-Breach of the Credit Card Authorization Form, against Feigen ([Filing No. 31 at ¶¶ 27](Filing No. 31 at ¶¶ 27)–31).

On October 17, 2022, Defendants moved to strike paragraph 27 and Count IV from IWC's as-filed Amended Complaint ([Filing No. 35](Filing No. 35)), arguing that IWC did not have leave from this Court to add the new paragraph or new Count IV.  That same day, Defendants moved to dismiss Count III ([Filing No. 39](Filing No. 39)).  On October 31, 2022, IWC filed its response to Defendants' Motion to Dismiss ([Filing No. 42](Filing No. 42)) and Objection to Defendants' Motion to Strike ([Filing No. 40](Filing No. 40)).  In its Objection, IWC contends that under Federal Rule of Civil Procedure 15(a), IWC could amend its complaint as a matter of course within twenty-one days of Defendants' Motion to Dismiss, which time had not yet passed and that the Motion to Strike would be "nullified by IWC re-filing its Amended Complaint" within that twenty-one-day period (*Id.* at ¶ 5).

On November 7, 2022, IWC filed a Second Amended Complaint, again without leave of Court ([Filing No. 43](Filing No. 43)).  The Second Amended Complaint made several further amendments to the as-filed Amended Complaint, although neither party identifies those amendments in their

briefing.² The Second Amended Complaint contains new paragraphs 13–14, 31, and 36, and amends paragraphs 15–16, 26–27, 32, 35, and 37 of the Second Amended Complaint, which were formerly numbered 13–14, 24, 26–27, 30–31, respectively, in the as-filed Amended Complaint (*compare* Filing No. 31 *with* Filing No. 43).

Following the filing of the Second Amended Complaint, Defendants filed a combined Reply in Support of Motion to Dismiss Count III and Renewed Motion to Strike (Filing No. 45). Defendants argue that IWC filed the Second Amended Complaint without leave in violation of Rule 15(a), and beyond the deadline to amend pleadings set forth in the parties' Case Management Plan (*Id.* at ¶¶ 8–10). IWC objected to the Renewed Motion to Strike, arguing that it was permitted to file its Second Amended Complaint without seeking leave under Rule 15(a), regardless of the deadline to amend in the Case Management Plan (Filing No. 46). Defendants timely filed their Reply in Support of Renewed Motion to Strike, and the Renewed Motion to Strike is now ripe for ruling.

**B.    LEGAL STANDARD**

Federal Rule of Civil Procedure 15 states that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 12(a)(1). The Rule provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Southern District of Indiana Local Rule 15-1(a)(1) further mandates that "[a] motion to

---

² The Court will *sua sponte* address whether to strike the additional amendments made in the Second Amended Complaint, since those additional amendments were made without leave of Court.

amend a pleading must if it is filed electronically, include as attachments the signed proposed amended pleading and a proposed order."

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may, (1) act on its own, or (2) on a motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading. *Id.* Motions to strike are generally disfavored; however, "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

**C.   DISCUSSION**

IWC argues that Rule 15(a) allows it to amend its complaint as a matter of course within twenty-one days of any answer or Rule 12(b) motion to dismiss ([Filing No. 40 at 2](#)). But IWC reads Rule 15(a) too broadly. Rule 15(a)(1) only allows a party to amend its pleading "once" as a matter of course within the specified time. The Rule does not, as IWC suggests, permit parties to amend their pleadings as a matter of course each time an opposing party files a responsive pleading or motion to dismiss. Fed. R. Civ. P. 15(a)(1). IWC is therefore incorrect in arguing that the Defendants' Motion to Dismiss "triggered" a new twenty-one-day deadline to file another amended complaint ([Filing No. 46 at ¶ 5](#)).

SCH's Answer to IWC's original Complaint started the one and only twenty-one-day period in which IWC could file an amended complaint as a matter of course. SCH filed its Answer on May 10, 2022, so under Rule 15(a)(1), IWC had until May 31, 2022, to file an amended complaint without leave. The only pleading IWC filed by May 31, 2022 was the Proposed Amended

5

Complaint attached to its First Motion for Leave,[3] which the Court did not grant until September 30, 2022. Because IWC did not file an amended complaint by May 31, 2022, IWC forewent its right to amend its complaint as a matter of course under Rule 15(a)(1). *Alvarez v. Local Union 103*, No. 16-cv-00125, 2017 WL 6997845, at *1 (S.D. Ind. July 13, 2017) ("The amended pleading is not determined as 'filed' until the Court grants the motion to amend and directs the party, or the Clerk of the Court in the case of a *pro se* Plaintiff, to file the amended pleading as a separate filing."). But even if IWC's Proposed Amended Complaint were considered "filed" by May 31, 2022, the Proposed Amended Complaint would constitute IWC's one and only amendment as a matter of course under Rule 15(a)(1)(B). In either case, IWC was not permitted to further amend its complaint without Defendants' written consent or leave of Court. IWC had neither, so any amendments to the Proposed Amended Complaint should be stricken.

IWC's noncompliance with Local Rule 15-1 convinces the Court that the new amendments to IWC's pleading should be stricken. IWC was aware that Local Rule 15-1 requires a party to attach to any motion to amend a pleading the "signed proposed amended pleading and a proposed order." S.D. Ind. L.R. 15-1(a)(1); (Filing No. 13 at ¶ 7 (quoting S.D. Ind. L.R. 15-1)). Yet after submitting a proposed amended pleading and obtaining leave from this Court to file that pleading, IWC filed a different pleading containing a new allegation and new cause of action. IWC's Second Amended Complaint was also filed after the Case Management Plan's deadline to amend pleadings. Although IWC's noncompliance appears to have been motivated by its misreading of Rule 15(a), IWC should have at minimum requested an extension of the amendment deadline before filing a pleading in violation of that deadline (Filing No. 46 at ¶¶ 3–5).

---

[3] IWC does not explain why it sought leave to file its Proposed Amended Complaint instead of filing the Proposed Amended Complaint as a matter of course under Rule 15(a)(1).

IWC also argues that Defendants will not be prejudiced by the new and amended allegations because they are based on the same "operative facts" as the Proposed Amended Complaint, and that an order striking the new allegations would serve no purpose because IWC will inevitably assert those allegations against Defendants whether by "seek[ing] leave to add the breach of contract claim or simply fil[ing] a separate lawsuit directly against Mr. Feigen" (Filing No. 30 at ¶ 2.). IWC's argument presumes that the Court would grant another motion for leave, which the Court has not always been inclined to do (Filing No. 30 (denying IWC's Second Motion for Leave)). More importantly, the possibility that IWC will be granted leave to amend its complaint in the future does not excuse its past violations of Rule 15 and Local Rule 15-1.

IWS had no authority to file any pleading inconsistent with the Proposed Amended Complaint. Accordingly, the entire Second Amended Complaint (Filing No. 27) and paragraphs 27–31 of the as-filed Amended Complaint (Filing No. 31) must be stricken.

## II.    DEFENDANTS' MOTION TO DISMISS COUNT III OF PLAINTIFF'S AMENDED COMPLAINT (DKT. 31)

### A.    BACKGROUND

The following facts are not necessarily objectively true, but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the as-filed Amended Complaint, excluding the stricken paragraphs, and draws all inferences in favor of IWC as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

IWC's claims originate from a Service Agreement for COVID-19 Clinical Testing (the "Agreement") entered into between IWC and SCH (Filing No. 31 at ¶ 6). Under the Agreement, SCH purchased and IWC sold and delivered COVID test kits to SCH (*Id.* at ¶ 7). On August 24,

2021, Feigen[4] signed a Credit Card Authorization Form (the "Authorization"), which allowed IWC to charge Feigen's credit card for any of SCH's outstanding invoices overdue by ten or more days (*Id.* at ¶ 12; Filing No. 31-4). The Authorization states:

> I, Lawrence E. Feigen, authorized representative of Client and authorized signer of the credit card reference [*sic*] above (the "Card") authorize Innovative Water Consulting to process payment[s] due from Client to IWC via such Card. Such authorization shall apply to any payments due. I understand that the Card may be saved in IWC's records and periodically charged for any invoice exceeding its due date by 10 (ten) days due IWC from Client, unless/until Client provides written notice of de-authorization to Client's IWC Account Manager, at least three (3) business days before any payment becomes due.

(Filing No. 31-4). The Authorization was signed by Feigen above a "Customer Signature" line (*Id.*).

IWC billed SCH for the delivered test kits and has demanded payment, but SCH has failed and refused to pay IWC (*Id.* at ¶¶ 8–10). Neither SCH nor Feigen provided IWC with a written notice of de-authorization of the Authorization at least three business days before any of SCH's payments came due (*Id.* at ¶ 13). IWC charged Feigen's credit card for several SCH invoices that were ten days overdue, but those charges were declined (*Id.* at ¶ 14). IWC subsequently initiated this action.

**B.     LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633.

---

[4] IWS's allegations do not specify what Feigen's relationship is to SCH, except that the Authorization identifies Feigen as an "authorized representative" of SCH (Filing No. 31-4).

However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**C.    DISCUSSION**

Defendants argue Count III of the Amended Complaint (Dkt. 31) should be dismissed because IWC has not sufficiently alleged any of the elements of a breach of guaranty agreement. Under Indiana law, "[a] guaranty is a conditional promise to answer for the debt or default of another person, such that the guarantor promises to pay only if the debtor/borrower fails to pay." *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016). A claim for breach of guaranty requires the plaintiff to show: (1) the existence of a guaranty agreement; (2) a breach of

9

that agreement; and (3) damages. *See Stough Assocs., L.P. v. Hage*, No. 19-cv-01970, 2020 WL 551114, at *5 (S.D. Ind. Feb. 4, 2020).

As to the first element, Defendants contend IWC has failed to allege that the Authorization is a personal guaranty for three reasons: Feigen signed the Authorization in his official capacity for SCH, not his personal capacity; the Authorization, on its face, shows that Feigen did not provide a personal guarantee; and the parties to the Authorization did not sign the purported guaranty in writing, as required under the Agreement. None of these arguments warrants dismissal of Count III at this stage.

Defendants first argue that Feigen did not create a personal guaranty because he executed the Authorization in his official capacity on behalf of SCH, and not in his personal capacity ([Filing No. 39 at 3](#)). Defendants emphasize that the Authorization states it is signed by "Lawrence E Feigen, authorized representative of Client . . . " and that Feigen signed the document above the "Customer Signature" line ([Filing No. 3 at 6](#)). However, these references to Feigen's representative status do not unambiguously show that Feigen signed the Authorization in an official capacity.

To determine whether Feigen signed the Authorization in his personal or official capacity, the Court must interpret the Authorization as it would any other contract under Indiana law. *See Kordick v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119, 123 (Ind. Ct. App. 1986). "The terms of the guaranty should neither be so narrowly interpreted so as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. Finally, in interpreting a guaranty, the court must read it as a whole and give effect to all of its provisions if possible." *Kordick v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119, 123 (Ind. Ct. App. 1986) (citation omitted) (citing *Loudermilk v. Casey*, 441 N.E.2d 1379 (Ind. Ct. App. 1982)).

Indiana caselaw interpreting guaranty agreements shows that references to the guarantor's official title are not conclusive of the capacity in which he signed. In *Kordick v. Merchants National Bank and Trust Co. of Indianapolis*, the Indiana Court of Appeals found that a debtor corporation's president, Kordick, signed a guaranty in his personal capacity despite the title "President" being printed below his signature, and affirmed a summary judgment ruling in favor of the creditor against Kordick personally. 496 N.E.2d 119 (Ind. Ct. App. 1986). The *Kordick* court noted that Indiana courts have long considered words like "'President,' 'Trustee,' or 'Agent' immediately following the signature, . . . as mere *descriptio personae*—words used merely for the purpose of identifying or pointing out the person intended and not words which intimate the obligation is to apply to him only in an official or technical character." *Id.* at 124, n.5 (citing *Bayh v. Hanna*, 122 N.E. 7 (Ind. Ct. App. 1919)). Additionally, the *Kordick* court explained that it would have been illogical for Kordick to have guaranteed the debt in his official capacity because it would have resulted in the corporate debtor guaranteeing the same debt it was already obligated to pay. *Id.* at 124 ("[I]t would be meaningless for [a company] to guarantee its own debt because it would add nothing to its existing obligation . . . ."). The Court of Appeals therefore concluded that "the language of the guaranty specifically negate[d] the signature as having been made in a representative capacity." *Id.* at 124.

The Indiana Court of Appeals reached the same conclusion in *JSV, Inc. v. Hene Meat Co., Inc.*, 794 N.E.2d 555 (Ind. Ct. App. 2003). In that case, debtor JSV, Inc. ("JSV"), executed a lease to rent a building from plaintiff Hene Meat Co. ("Hene"). Mark Kennedy ("Kennedy") signed the lease as an officer of JSV. Kennedy also signed a guaranty of the lease's performance. *Id.* at 557. A year later, JSV stopped paying rent to Hene, so Hene sued JSV under the lease and Kennedy, personally, under the guaranty. The trial court granted summary judgment in favor of Hene against

both JSV and Kennedy personally. *Id.* at 558. On appeal, Kennedy argued that he did not execute the guaranty in his personal capacity, but the Indiana Court of Appeals found that "there would have been no point in Hene's obtaining Kennedy's guaranty of the lease if he was doing so only in his official capacity as an officer of JSV. Such an action would have been equivalent to JSV guaranteeing JSV's performance of the lease . . . ." The *JSV* court stated that "such a result would be paradoxical and untenable." *Id.* at 560.

In this case, SCH was already obligated under the Agreement to make payment to IWC (Filing No. 39 at 4). Based on SCH's preexisting obligations, the Court may reasonably infer that Feigen signed the guaranty in his personal capacity instead of his official capacity. *JSV, Inc.*, 794 N.E.2d at 560. Under *Kordick* and *JSV*, the Court cannot conclude at this stage that IWC has failed to plausibly alleged that Feigen signed the Authorization in his personal capacity. Any ambiguity regarding the capacity in which Feigen's signed the Authorization must be resolved on summary judgment or at trial.

Second, Defendants argue that the face of the Authorization "clearly and unequivocally contradicts [IWC 's] allegations that Feigen agreed to answer for another person's debt, default or failure to perform" (Filing No. 39 at 3–4). Defendants note that neither the word "guaranty" nor the phrase "personally, absolutely, and unconditionally guaranteed" appears anywhere in the Authorization, and that the Authorization "only authorized the charging of a designated credit card 'periodically' 'for any invoice exceeding its due date by 10 (ten) days," subject to a "notice of de-authorization" from SCH (Filing No. 39 at 3 (quoting Filing No. 31-4)). However, no specific words or phrases are required to form a binding guaranty agreement. A guaranty, in substance, is a "conditional promise to answer for a debt or default of another." *Shoaff v. First Merchant Bank*, -- N.E.3 --, 2022 WL 17574686, at *5 (Ind. Ct. App. 2022) (quoting *Broadbent v. Fifth Third Bank*,

59 N.E.3d 305, 311 (Ind. Ct. App. 2016)). The guaranty "must consist of three parties: the obligor, the obligee, and the surety or guarantor." *JSV, Inc.*, 794 N.E.2d at 560 (concluding that the document at issue "was unambiguously a personal guaranty, notwithstanding the fact that the word 'personal' does not appear in the document"). Here, drawing all reasonable inferences in IWC's favor, the Authorization appears to contain Feigen's conditional promise to answer for SCH's overdue payments, and it identifies the three necessary parties: SCH, the obligor; IWC, the obligee; and Feigen, the guarantor.

The Authorization's "periodical" authorization, subject to "de-authorization," is also consistent with the terms of a continuing guaranty under Indiana law. Indiana law defines a continuing guaranty as one that "'contemplates a future course of dealing during an indefinite period, or . . . is intended to cover a series of transactions or succession of credits, or . . . its purpose is to give to the principal debtor a standing credit to be used by him from time to time.'" *Grabill Cabinet Co., Inc. v. Sullivan*, 919 N.E.2d 1162, 1165 (Ind. Ct. App. 2010) (quoting 38 Am.Jur.2d Guaranty § 20 (1999) (alteration and omission in original)). A continuing guaranty "'is not limited in time or amount and is operative until revoked.'" *Grabill Cabinet Co., Inc.*, 919 N.E.2d at 1165 (quoting 49 Am. Jur. 2d Landlord and Tenant § 819 (1995)); *see Skrypek v. St. Joseph Valley Bank*, 469 N.E.2d 774, 777 (Ind. Ct. App. 1984) ("Language similar to that in [plaintiff's] guaranty is used in 38 *Corpus Juris Secundum*, 'Guaranty,' § 7, at 1142, in which a continuing guaranty is said to contemplate 'a succession of liabilities, for which, as they *accrue*, the guarantor becomes liable.'" (emphasis in original)). The Authorization, on its face, allows IWC to charge Feigen via credit card for payments as they become overdue throughout the indefinite period of IWC and SCH's relationship, and was to remain operative until revoked. IWC has sufficiently alleged that the Authorization contains the parties and substantive features of a personal guaranty.

13

Third, Defendants argue that the Authorization is not valid because the Agreement requires that "'[a]ll waivers and amendments to this Agreement must be signed in writing by each party,'" and IWC has not alleged that the "parties agreed in writing that the Credit Card Authorization Form or any purported personal guaranty would be accepted as payment per the contract" (Filing No. 39 at 4 (quoting Filing No. 31-4)). However, this argument requires the Court to infer that the Authorization is waiver or amendment to the Agreement instead of a separate agreement, and the Court may not draw inferences in Defendants' favor at this stage. IWC has sufficiently alleged that the Authorization is a personal guaranty agreement, satisfying the first element of a breach of guaranty agreement claim.

As to the second element of a breach of guaranty claim, breach, Defendants argue that IWC has failed to allege a breach of a guaranty agreement because it has failed to allege the existence of a guaranty agreement (Filing No. 39 at 4). Because IWC has sufficiently alleged the existence of a guaranty agreement, Defendants' argument regarding breach cannot succeed. Moreover, IWC has alleged that IWC's charges to Feigen's credit cards were declined, which is sufficient at this stage to allege Feigen's breach (Filing No. 31-4 at ¶¶ 14, 23).

Lastly, as to the third element, damages, Defendants argue that IWC has failed to allege that it suffered damages as a result of Feigen's breach of the Authorization (Filing No. 39 at 4). Defendants explain that although IWC attempted to insert a paragraph 27 alleging damages, that paragraph must be stricken. In response, IWC argues that the filing of its Second Amended Complaint moots Defendants' damages argument (Filing No. 42 at ¶ 3). For the reasons discussed above, IWC 's paragraph 27 has been stricken. The Court therefore agrees with Defendants that IWC has failed to sufficiently allege damages related to Feigen's alleged breach of the guaranty. *See Directv, LLC v. Spina*, No. 15-cv-00104, 2016 WL 3097212, at *5 (S.D. Ind. June 3, 2016)

(dismissing breach of contract claim for failing to adequately allege damages element beyond allegation that plaintiff "was damaged"); *see also Accutech Sys. Corp. v. Bar Harbor Bank & Trust*, No. 18-cv-03917, 2019 WL 12496302, at *4 (S.D. Ind. Aug. 20, 2019) (citing *Directv*, 2016 WL 3097212). Count III must therefore be dismissed.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Strike Plaintiff's Count IV of its Amended Complaint (Filing No. 35) is **DENIED as moot** and Defendants' Renewed Motion to Strike (Filing No. 45) is **GRANTED.** The entire Second Amended Complaint (Filing No. 43) is **STRICKEN**. The operative Amended Complaint in this action is Filing No. 31. Paragraph 27 and Paragraphs 28 through 31 (Count IV) of IWC's as-filed Amended Complaint (Filing No. 31) are **STRICKEN.**

For the reasons stated above, Defendants' Motion to Dismiss Count III (Filing No. 38) is **GRANTED**. Count III against Feigen (in Filing No. 31) is **DISMISSED without prejudice**. Because Defendants did not challenge the sufficiency of Count III's damages allegations before filing their Motion to Dismiss, IWC is granted leave to file a Second Amended Complaint addressing **only** the insufficiency of its damages allegations as to Count III within **fourteen (14) days** from the date of this Order (Filing No. 38).[5] If IWC does not file a Second Amended Complaint within fourteen (14) days from the date of this Order, or is unable to overcome the deficiencies identified in this Order, then Count III will be dismissed with prejudice.

---

[5] *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim." (quotation and citation omitted)).

15

**SO ORDERED**.

Date: 1/9/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ryan Andrew Deutmeyer
AUSTGEN KUIPER JASAITIS P.C.
rdeutmeyer@austgenlaw.com

John Joseph Morse
MORSE & BICKEL, P.C.
morse@morsebickel.com