UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INNOVATIVE WATER CONSULTING, LLC d/b/a IWC INNOVATIONS, <br><br> Plaintiff, <br><br> v. <br><br> SA HOSPITAL ACQUISITION GROUP, LLC d/b/a SOUTH CITY HOSPITAL, LAWRENCE E. FEIGEN, MORRISANDERSON & ASSOCIATES, LTD as general receiver for SA Hospital Acquisition Group, LLC d/b/a South City Hospital, <br><br> Defendants. | Case No. 1:22-cv-00500-TWP-MKK |

**ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Innovative Water Consulting, LLC d/b/a IWC Innovations ("IWC") (Filing No. 122) and Defendant Lawrence E. Feigen ("Feigen") (Filing No. 127).  IWC initiated this breach of contract action after Defendant SA Hospital Acquisition Group, LLC d/b/a South City Hospital ("SCH") refused to pay for COVID-19 test kits that IWC delivered. IWC claims that Feigen personally guaranteed SCH's debts and is therefore liable to it. IWC's claims against SCH have been resolved by consent judgment, and IWC and Feigen have cross-moved for summary judgment on IWC's remaining personal guaranty claim against Feigen. For the following reasons, parties' cross-motions are **denied.**

I.   BACKGROUND

During the COVID-19 pandemic, IWC and SCH entered into a Service Agreement—COVID-19 Clinical Testing (the "Service Agreement") under which IWC would sell, and SCH would buy, COVID-19 test kits (Filing No. 122-1 ¶ 3; Filing No. 58-1). Separately, Feigen signed

a credit card authorization form (the "Authorization") that authorized IWC to charge Feigen's personal credit card for any payments owed by SCH (Filing No. 58-3). The Authorization states:

> I, Lawrence E. Feigen, authorized representative of Client and authorized signer of the credit card reference [sic] above (the "Card") authorize [sic] Innovative Water Consulting to process payment[s] due from Client to IWC via such Card. Such authorization shall apply to any payments due. I understand that the Card may be saved in IWC's records and periodically charged for any invoice exceeding its due date by 10 (ten) days due IWC from Client, unless/until Client provides written notice of de-authorization to Client's IWC Account Manager, at least three (3) business days before any payment becomes due.

(Filing No. 122-1 ¶ 9; Filing No. 58-3).

IWC billed SCH for several thousand test kits that were ordered by and shipped to SCH, but SCH refused to pay IWC for all of the kits (Filing No. 122-1 ¶ 5). IWC attempted to charge Feigen's personal credit card, but the charges were declined. *Id.* ¶ 11. IWC's outstanding invoices show that $272,806.72 remains outstanding. *Id.* ¶ 6; (Filing No. 58-2).

In August 2023, SCH filed a Bankruptcy Petition, which listed IWC as the creditor of an unsecured claim in the amount of $268,304.70 (Filing No. 128-1 at 7). Feigen and another SCH member originally filed the Bankruptcy Petition, although that Petition was later dismissed because the Bankruptcy judge found that SCH's members did not have authority to file it (Filing No. 129-2). Around the same time, Defendants notified the Court that MorrisAnderson & Associates, Ltd. ("MorrisAnderson"), had been appointed as general receiver for SCH. MorrisAnderson intervened in this action (Filing No. 91) and filed a Suggestion of Bankruptcy and Notice of Automatic Stay as to SCH (Filing No. 93). In February 2024, IWC and MorrisAnderson jointly moved to lift the automatic stay and for entry of a consent judgment (Filing No. 107). The Court granted the motion and entered the parties' consent judgment in favor of IWC and against SCH in the amount of $268,304.70 (the "Consent Judgment") (Filing No. 108).

IWC and Feigen have filed cross-motions for summary judgment as to IWC's remaining personal guaranty claim against Feigen. The cross-motions are now ripe for the Court's review.

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation

marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III. DISCUSSION

The parties' cross-motions focus on two issues: whether the Authorization is a personal guaranty of SCH's debts; and, if it is, whether the amount owed to IWC is genuinely disputed. The Court will address both issues in turn.

#### A. The Authorization

Both parties argue that the Authorization is unambiguous, but they disagree about whether the Authorization unambiguously *is* or unambiguously *is not* a personal guaranty. Under Indiana law, "[a] guaranty is a conditional promise to answer for the debt or default of another person, such that the guarantor promises to pay only if the debtor/borrower fails to pay." *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016).

4

IWC contends that the Authorization unambiguously is a personal guaranty because its terms and purpose are the same as a personal guaranty under Indiana law. "[T]he Authorization contains Feigen's unconditional promise to answer for SCH's overdue payments, and it identifies the three necessary parties: SCH, who is the obligor; IWC, who is the obligee; and Feigen, who is the guarantor." (Filing No. 123 at 6.) IWC specifically notes that Feigen authorized IWC to charge his personal credit card and not a company card (Filing No. 128 at 4). IWC also argues that the Authorization's "periodical" authorization subject to "de-authorization" is consistent with the terms of a continuing guaranty under Indiana law, which "'is intended to cover a series of transactions or succession of credit.'" *Id.* (quoting *Grabill Cabinet Co., Inc. v. Sullivan*, 919 N.E.2d 1162, 1165 (Ind. Ct. App. 2010)). Further, IWC cites cases in which Indiana courts have found that guaranties are personal guaranties, explaining that it would be illogical for an obligor to guarantee its own debts. *See Kordick v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119 (Ind. Ct. App. 1986), and *JSV, Inc. v. Hene Meat Co., Inc.*, 794 N.E.2d 555 (Ind. Ct. App. 2003). The Court accepted many of these arguments in its Order on Defendants' partial Motion to Dismiss, in which the Court declined to hold that the Authorization unambiguously is not a personal guaranty (Filing No. 52 at 11–13).

Feigen argues that the Authorization is not a personal guaranty and is simply an agreement that permits an alternative method of payment to IWC (Filing No. 126 at 3). Feigen explains that the Authorization does not contain a promise to pay SCH's debts, like a guaranty, and instead only allows IWC to process payments owed by SCH via Feigen's credit card. The Service Agreement requires SCH to make payments via wire transfer (Filing No. 58-1 at 1, ¶ 4). By providing an alternative method of payment, the Authorization serves some purpose other than guaranteeing SCH's preexisting debts. *Contra Kordick*, 496 N.E.2d at 124 (concluding that if the guaranty was

a representative guaranty, "it would add nothing to [the obligor's] existing obligation"). Feigen also contends that the Authorization was not a personal guaranty because he "did not promise to keep his credit account open in perpetuity, nor did he (or could he) assure IWC that his credit-card lender would maintain his account or advance such sums as IWC billed for." *Id.* The Authorization therefore never anticipated that Feigen would guaranty SCH's debts. Other portions of the Authorization also indicate that it is not a personal guaranty. For one, the Authorization "appl[ies] to any payments due" from SCH, not only overdue payments (Filing No. 58-3). And as Feigen points out, the Authorization provides that only SCH can provide a notice of de-authorization. *Id.*

Based on the language of the Authorization, both parties' interpretations are reasonable. Reasonable people could come to different conclusions as to whether the Authorization is a personal guaranty by Feigen or simply an authorization for an alternative method of payment. The Authorization is therefore ambiguous. When a contract's language is ambiguous, the contracting parties' intent is a question of fact "to be informed by extrinsic evidence." *Hess v. Bioment, Inc.*, 105 F.4th 912, 918 (7th Cir. 2024). Because the parties' intent is a question of fact, it must be resolved by the factfinder. *See Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010) ("When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the factfinder."). An ambiguous contract will generally be construed against its drafter. *Buskirk v. Buskirk*, 86 N.E.3d 217, 224 (Ind. Ct. App. 2017) (citing *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995)).

Neither side has offered sufficient evidence to show, beyond genuine dispute, that the contracting parties intended for the Authorization to be, or to not be, a personal guaranty. The only evidence in the summary judgment record related to the parties' intent is Feigen's Affidavit,

6

in which he states that "[t]he Credit Card Authorization was intended to function as a means of facilitating rapid payment of invoices" and that he "did not promise and did not intend to promise to answer for [SCH's] debt or default to IWC under the Service Agreement." (Filing No. 126-at 2, ¶¶ 7–8.)  However, the Seventh Circuit has clearly stated that "when considering extrinsic evidence to interpret an ambiguous contract, a judge generally should consider only objective evidence of the parties' intended meaning; a judge should 'never consider[] either side's private thoughts and hopes.'" *Cocquyt v. SpartanNash Co.*, Nos. 21-3254 and 21-3324, 2022 WL 3273804 (7th Cir. Aug. 11, 2022) (quoting *Kunkel v. C.I.R.*, 821 F.3d 908, 910 (7th Cir. 2016) ("The federal law of contract . . . is objective, just like state contract law.  This means that the parties' intents matter only to the extent that they are expressed to each other.  When considering parol evidence a court looks to documents, and sometimes to oral exchanges, but never considers either side's private thoughts and hopes." (citation omitted))).  The Court may not consider Feigen's subjective statements as evidence of the parties' intent.  In the absence of any objective evidence, a genuine dispute of material fact remains, and both party's cross-motions must be **denied**.

**B.**     **The Amount Owed**

The parties disagree as to whether the amount owed by Feigen to IWC, assuming *arguendo* that the Authorization is a personal guaranty, is beyond dispute.  In his Affidavit, Feigen disputes IWC's allegation that it delivered COVID-19 test kits for which it was not paid.  Feigen asserts that after the payment dispute arose between IWC and SCH, he "caused a reconciliation to be made regarding the test kits allegedly shipped by IWC," which revealed that IWC did not deliver approximately 20,000 of the 73,008 test kits that it claims to have delivered (Filing No. 126 at 7–8; Filing No. 126-1 at 2–3, ¶¶ 9–16).  Attached to Feigen's Affidavit is a "Preliminary Analysis of Overbilling by IWC" dated "2/25/2022" (Filing No. 126-1 at 6–7) and a spreadsheet titled

"Summary of Test Kits Purchased," *id.* at 8–9.  Feigen contends that this evidence creates a genuine dispute of material fact as to the amount owed to IWC.

On reply, IWC argues that the amount owed is not genuinely disputed because Feigen admitted in the Bankruptcy Petition that IWC is owed $268,304.70 (Filing No. 128 at 1–4).  IWC also contends that the evidence submitted by Feigen should be stricken because it was not produced to IWC during discovery, and therefore cannot create a genuine dispute of fact.[1]

The Court will first address whether the statements in the Bankruptcy Petition are conclusive and then discuss whether Feigen's evidence is admissible and sufficient to create a genuine dispute of material fact.

### 1.      **Whether Statements in the Bankruptcy Petition are Conclusive**

Assuming that the statements in the Bankruptcy Petition are attributable to Feigen, which the Court does not presently decide, they are not binding on Feigen in this litigation.  Judicial admissions, which are formal concessions or stipulations, are binding on the party making the admission, but evidentiary admissions, which include trial or deposition testimony, are not binding and may be controverted or explained by the party making the statement. *See Keller v. United States*, 58 F.3d 1194, 1998 n.8 (7th Cir. 1995).  Here, the Court "needn't consider which type of admission [the Bankruptcy Petition] was, judicia or evidentiary, because a judicial admission binds only in the litigation in which it was made.  In any other suit, . . . it operates merely as an evidentiary admission." *Higgins v. Mississippi*, 217 F.3d 951, 954–55 (7th Cir. 2000).  The statements in the Bankruptcy Petition are therefore not conclusive, and Feigen may rebut them with other evidence.

---

[1] In his response to IWC's Motion, Feigen also argues that the doctrines of *res judicata* or collateral estoppel do not bar him from disputing the amount owed, despite entry of the Consent Judgment.  The Court will not address these arguments, since IWC does not raise the issues of *res judicata* or collateral estoppel in its Motion.

2. **Whether Feigen's Evidence is Admissible or Raises a Genuine Dispute**

IWC asserts two arguments regarding Feigen's summary judgment evidence. First, IWC argues "the evidence submitted by Feigen does not overcome the prior admission made [in the Bankruptcy Petition]." (Filing No. 128 at 3.) This argument is unsupported and undeveloped, so it is waived. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (stating that where party fails to support position with any legal analysis or citation, the argument is waived).

Second, IWC argues that Feigen's evidence is inadmissible and should be stricken because it was not produced to IWC during discovery, despite being requested (Filing No. 128 at 3–4). Specifically, IWC states it served document requests on SCH and Feigen which requested, in part, "all documents that relate to or support SCH's Affirmative Defenses," and "all documents upon which you rely for defending against Plaintiff's Amended Complaints." (Filing No. 128-3 at 7, ¶¶ 17–18.) Feigen responds that the challenged evidence was not discoverable, so it should not be stricken. As to the request for documents "that relate to or support SCH's Affirmative Defenses," Feigen notes that neither this request, nor any other request, asked for documents related to Feigen's affirmative defenses. As to the request seeking "all documents upon which you rely for defending against Plaintiffs' Amended Complaint," Feigen argues that he properly objected to this request as unduly broad, unlimited in time and scope, and seeking documents protected by the attorney-client privilege and work product doctrine.

IWC does not identify a specific legal basis for moving to strike Feigen's evidence, but the basis appears to be Federal Rule of Civil Procedure 37. Rule 37(c)(1) provides, in relevant part, that if a party fails to provide information as required by Rule 26(e), which requires the

9

supplemental production of material documents, then that party may not use the non-disclosed documents "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court finds that Feigen was substantially justified in not producing the evidence challenged by IWC. Feigen is correct that IWC only requested documents related to SCH's affirmative defenses, and not Feigen's affirmative defenses. The Court further agrees that IWC's other request is objectionable because it seeks documents protected by the work product doctrine, as explained by the Indiana Court of Appeals in *Amax Coal Co. v. Adams*, 597 N.E.2d 350, 355 (Ind. Ct. App. 1992). In *Amax Coal*, the Indiana Court of Appeals found that the trial court erred in ordering the defendant to produce documents in response to similar discovery requests, which sought "all documents," documents "containing, discussing or relating to facts or other information" supporting the defendant's denials of allegations in the complaint or supporting its defenses. *Id.* at 354. The *Amax Coal* court explained why these "contention-type" requests for documents are improper:

> The requests at issue here ask [the defendants], obviously acting through its attorneys, to select from all the documents properly discoverable in this case those which [the defendant's] attorneys have determined contain, discuss, or relate to the various pleading responses it advanced on [the defendant's] behalf. Clearly, the selection process the [plaintiff] requests is inextricably interwoven and inseparable from the part of the "mental impressions, conclusions, opinions, [and] legal theories' of [the defendant's] attorneys which T.R. 26(B)(3) mandates we protect from forced disclosure.

*Id.* at 355 (second to last alteration in original). Under *Amax Coal*, IWC's request for "all documents upon which you rely for defending against Plaintiffs' Amended Complaint" seeks documents protected by the work product doctrine, and Feigen's objection was therefore substantially justified. *See Smith v. Metro. Property & Casualty Ins. Co.*, No. 20-cv-53, 2021 WL 3129453, at *7 (N.D. Ind. July 22, 2021) (applying *Amax Coal*).

10

Because Feigen has shown that his non-disclosure of his summary judgment exhibits was substantially justified, the Court will not strike those exhibits. IWC has waived any argument that these exhibits are sufficient to create a genuine dispute as to the amount owed to IWC under the Services Agreement, and the Court finds that those exhibits, coupled with Feigen's Affidavit, do raise a genuine dispute as to the amount owed. IWC's request for summary judgment as to the amount owed is therefore **denied**.

### IV.  CONCLUSION

For the reasons explained above, the Court **DENIES** Plaintiff Innovative Water Consulting, LLC d/b/a IWC Innovations' Motion for Summary Judgment (Filing No. 122) and Defendant Lawrence E. Feigen's Cross-Motion for Summary Judgment (Filing No. 127).

The claims in this case will be resolved by trial or settlement. Accordingly, the parties are directed to contact the Magistrate Judge to discuss whether another settlement conference might be fruitful. This matter remains scheduled for final pretrial conference on December 11, 2024 and trial on January 6, 2025.

**SO ORDERED**.

Date:  11/6/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John Joseph Morse
MORSE & BICKEL, P.C.
morse@morsebickel.com

Daniel J Dwyer
VERRILL DANA
rguarino@verrill-law.com

Julianne Dailey
THOMPSON COBURN LLP
jdailey@thompsoncoburn.com